Our second case for argument this morning is United States v. Kozicki Ms. Pollack May it please the Court and Counsel, Elizabeth Pollack on behalf of Mr. Kozicki I think everybody agrees now, the government has responded in briefing, that a district court does not have the ability to dictate to the Bureau of Prisons where a defendant will be placed upon a sentence of imprisonment. So the only question that remains then in this case for the first issue is whether or not the district court was aware that she did not have that discretion. And based on the record and also the circumstances surrounding the multiple continuances of the sentencing hearing in this case, it is pretty clear that the district court believed that she had some authority to dictate to the Bureau of Prisons that Mr. Kozicki should be placed somewhere in Southern California. I don't see that she actually issued that directive. It's a recommendation. Well, the judgment reads recommendation, but in the context of what she said at sentencing when she was making her ruling. There's nothing there that is a directive. It's all in the language of a recommendation. What I'm referring to when she issued her ruling is when she stated that she wanted the BOP to reassure her that Mr. Kozicki would be cared for. I do want to be reassured by the Bureau of Prisons that, in fact, they do have a placement for you. That's not a directive that they place him at a particular facility. Well, she didn't state you must place him in San Diego, but she did infer through her commentary that she believed that the Bureau of Prisons  So it's a recommendation, and there's nothing wrong with a recommendation. There's nothing wrong with a recommendation so long as the district court is aware that the Bureau of Prisons doesn't necessarily have to follow that recommendation. That's just what a recommendation means. It's the difference between a recommendation and an order. Judges who order something order it. Judges who recommend something recommend it. And this judge recommended something. She didn't actually recommend it in the first hearing at all. The original judgment was silent because the judgment did not contain anything about it. Well, that's nothing, and then she recommended it. The verbal commentary is controlled. Is there any place where the district judge ordered a particular placement? No, but the statements of the court indicate that she believed that she could have him placed in Southern California. Well, that doesn't matter what she believed unless she issued the order. There's no error here. Well, there's an error because when she decided to impose a 15-month sentence, it was under the assumption that Mr. Kozicki would be safe and that he would not be dead when he went to the Bureau of Prisons. And it's clear from the context in her ruling that at this point, it's been almost a year since when the sentencing came to pass. It was almost a year since the plea. The sentencing had been continued three separate times, specifically because Mr. Kozicki was too ill to make it to Central Illinois. And the court stated at the beginning of the sentencing hearing, she said, I do the defendant's poor health and the doctor's orders that require he not travel more than two hours from his home. I have repeatedly continued this hearing. And then she later states on page 7 of the record, given his poor health and inability to travel, I don't think we have much of a choice than all of us going to Southern California. I don't know what your goal is here. Does he not want to go to Southern California? No, he doesn't. If you look at the later hearings in this cause, it looked like the Bureau of Prisons would eventually designate him to Terminal Island, which would be acceptable. I think the problem is that when the district court decided on 15 months, she believed that that 15-month sentence could be served in a location which would not be detrimental to his health. And it will because there are multiple medical records in the record which state that he can't travel. He has a particular medical device implanted in his heart, which is linked via the Internet to his cardiologist's office in San Diego. It's a device that was only marketable as of 2014. There's under 100 of them in the country. And because of that particular condition, if he travels, and this is a guy who after he was sentenced had two additional cardiac surgeries. So if he were to, if the placement is maintained as it stands right now, which it's still technically up in the air with the BOP, but if the placement is maintained at Butner, North Carolina, there's a very real possibility that this guy is going to die on his way to prison. And the court recognized the existence of these challenging medical conditions. And the court said in multiple places in the record he cannot travel. She researched facilities in Southern California. She was aware that there were BOP facilities in Southern California. She had continued the sentencing three times because he couldn't make it to Illinois, which is a closer ride than North Carolina for this gentleman. And then she said she assumes that the BOP, if they have an issue with placing him, will get back to her. That indicates at least a belief that if the BOP were to come back and say, we can't place this guy or we can't place him in Southern California, that the district court believed it could do something about that. What else could it mean? The plain language, I want to be reassured by BOP. And if there's a problem, they'll get back to me. That indicates that she believed she could do something about it, but she couldn't because it's a final judgment. And so when you say that there's no order, you must go to San Diego, that's correct. But the context of her imposition of the sentence clearly indicates that she believed that the BOP would put him where she wanted him put, which was in Southern California. And all evidence states that if he is forced to travel to North Carolina, not only could the trip kill him, but the existence of this particularized cardio MEMS device monitoring system, there's no indication anywhere that the BOP has that capability of caring for somebody with that specific of a device. And I'll note, we argued this, I guess, sort of outside of with any evidence in the record. The government says, well, we used to get assurance from the Bureau of Prisons that for people with particular conditions like this, that they could care for him. And we stopped doing it because the BOP always said, okay, we can care for someone with this run-of-the-mill chronic condition. This isn't a run-of-the-mill chronic condition, and there's no evidence in the record that the BOP can take care of this particular issue. So why does that matter? The Bureau of Prisons doesn't have to demonstrate to a district judge how it provides medical care. No, it doesn't. That's not the district judge's bailiwick. It's not the BOP's responsibility to demonstrate. However, if a judge is considering the medical treatment of a defendant in sentencing. A judge can't consider the medical treatment of a defendant. It's just not her job. Well, the 3553A factors do tell a judge to consider the history and characteristics of the defendant, including needed care, education, et cetera. So it is, in fact, her job that she has to address those things. Well, what exactly is the legal error? You've now, we're in agreement. There is no order that he be placed at a particular facility. If there were such an order, maybe that would be a legal error. But there isn't such an order. So what exactly is the legal error? The procedural error in this case is that the district court, when issuing the sentence, even though it wasn't in writing in the original judgment, and then later there was an attempt to fix that. And I understand that it was in the language of a recommendation because the judgment is a form that people fill out, that judges fill out, and it says, you know, is there a recommendation for placement? Yes. But as this court has held previously in many cases, what is stated on the record at sentencing is important. And if something in the oral transcript contradicts a judgment, then it's the oral transcript that governs. Right. But we've just confirmed that the oral transcript contains no order. It doesn't, although it does contain the suggestion that the district court did not understand that she could not make sure that this individual was in Southern California. Right. But it's still in the nature of a suggestion. So there isn't a procedural error here. What a district court considers under 3553A, if they make a mistake and they think that they can do something that they really cannot do, that is a procedural error. But she didn't do anything other than make a recommendation, which is what she can do. She can make a recommendation, but in making the recommendation, she was under the idea that she believed that she could make sure Mr. Kozicki went to Southern California. So what? I mean, whether she misapprehended her authority, she never issued an order expecting it to be complied with. But it was a mistake, one that could very well result in death or serious physical damage to the defendant. What was the mistake? The mistake was her stating on the record that, and it's right here in plain English, I don't know what the other reading of that could be, that she believed that the BOP could reassure. So the mistake was what was in her head. Yes. Not what she actually did. Well, she said what was in her head. And what she said was that she thought BOP could get back to her, which would lead her to be able to change her opinion. I'd like to reserve the rest of my time for rebuttal. Mm-hmm. Certainly, counsel. So let me ask you this. She never said, sorry, she never said, now this issue of where he gets placed is really critical to me. So I want to get an assurance from the Bureau of Prisons that she's going to California before I finally impose my sentence. She never said that, did she? Well, she didn't say it in those words, but she did say at the sentencing that she recognized the severity of his medical conditions, that she had researched the availability of facilities in Southern California. And she never said, and if he cannot go to California, if I learn that information, then I will not impose a jail sentence. Well, no, she didn't specifically say that, but the context surrounding her comments is that that's what she believed. Okay. Mm-hmm. All right. Thank you, Ms. Pollack. Mr. Phillips. Good morning, Your Honors. May it please the Court, Segev Phillips on behalf of the United States. Your Honors, district court judges are presumed to know the law, and a claim that a district court judge did not understand its authority has to be based on more than inference. And this is especially true in cases such as this, when what we're talking about is something as routine as a BOP placement. I mean, it happens in virtually every sentence that's imposed. So are you disputing what she's saying in terms of only 100 people are in this situation, need this particular equipment, need to be connected to the doctor? Are you disputing his underlying condition and some of the issues surrounding that? So I don't think it's in dispute that Mr. Kozicki is not in good health. Right. That part I understand. I'm talking about the specifics as to why it needed to be limited geographically so there could be this. The district court certainly hoped that BOP would keep him close in Southern California so that he could perhaps see his own doctors. But really, BOP is. So it wasn't this issue that she raised, that it had to be within this geographical, that he had to be in the Southern California because the doctor had to be able to contact him. You don't agree with that? No. No. It seems very clear from the evidence that the judge was just making a recommendation that it hoped that Mr. Kozicki could stay close to his Southern California physicians. But everything else suggests that this was just a recommendation, as the court pointed out. Well, let me ask you this. If it were medically certain that his life would be in grave danger if he was moved to North Carolina and placed in Buckner, would this change the government's position? No. Well, that's a fact, obviously, that isn't here. There is a procedure. The defendant keeps saying that there is no way for the court or for the BOP to come back to the court after judgment. But that's actually simply not true. 3582C allows the BOP commissioner to come back to the court if there are, and I think the language is extraordinary and compelling circumstances. If you look at the guidelines, I believe it's 1B1.13. Don't quote me on that. It points out that BOP should come back to the court if there is a terminal illness or if there is an illness that is basically beyond the means that the defendant cannot self-care in the prison environment. So there are ways that BOP can actually come back, but it's rare. And it's rare because BOP has extraordinary medical facilities. I mean, I've been to the federal medical facility in Buckner. It is 30 minutes from Duke University and the University of North Carolina hospitals and has access to those. I mean, there's just not enough here to overcome the presumption. I mean, if you look at both what happened at sentencing, including that the court left it open because it assumed that BOP would want to take its time in placing Mr. Krasicki, that the court told him to watch his designation letter. Then you look to the actual judgment, which is the same judgment form that occurs in every sentencing, which has both a recommendation checkbox as well, actually, as a checkbox that says the defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons. Both of those boxes were checked in this case. And then looking to all the post-sentencing, I mean, we had a sentencing in May. There was a July ruling and a July hearing. There was an August hearing, a September hearing, a November hearing, and now we're awaiting a January hearing. And never once beyond that time, certainly in some of that time, there was the understanding that he was going to be designated a butler. And the court never once took the opportunity to say, hey, wait a second, I ordered him to go to Southern California. I mean, that simply never existed. In fact, it should be pointed out that in their reply brief in pages 3 and 4, the defendant says that, well, what the judge said at sentencing could mean that it wanted BOP to let her know if he couldn't be housed in Southern California, or it could mean that the court wanted BOP to let them know if he couldn't be housed at all. Well, if it's an either-or, the presumption suggests that the judge understood the law when it ruled as it did. And given the court's earlier questioning and seeing no further questions, the government requested the court affirm the disreport. Thank you, counsel. Anything further, Ms. Pollack? The last thing that Mr. Phillips stated about the court never addressing that issue again is actually false. In a later status hearing when the BOP had come back and said, okay, now we think that he should be in Terminal Island, which is a facility in Southern California, everybody seemed to be on the same page at that status hearing. And the only reason for continuing the reporting date at that time was because Mr. Kaczynski had a further heart procedure scheduled and could not physically report due to his ill health. So the not addressing Southern California again is just wrong. We did in a status hearing, I think it was the August status hearing, when BOP said, we can put him in Terminal Island. And we said, great, that's close. He'll be taken care of at that point. And then all of a sudden BOP came back and said, never mind, it's Butner again. And so I think that what needs to happen here, and we sort of neglected the second argument, which is that under the circumstances in particular in this case, it's not just the existence of a procedural error, it's also the fact that this could be deemed a substantively unreasonable sentence under the circumstances. Actually, that's the whole argument here. I understand. Because there really wasn't an error. What you're trying to persuade us is that the sentence itself is unreasonable because of the premise on which it was based. I believe that is a fair statement, Your Honor. So, I mean, I disagree about the fact that there was no procedural error, but I also have the second argument, which is that this is just a substantively unreasonable sentence under the circumstances. And if you look at the way that everything was conducted after the original sentencing hearing, I mean, Mr. Kaczynski was sentenced in May of 2016, and here we are in January, and the district court is continuing to allow him not to report because of his ill health. So I suppose one remedy is to just keep continuing his reporting date forever until he is finally safe to report to Butner, which will probably be never. Or we could remand the case for resentencing so that the court could adequately consider all of these considerations about the placement in BOP. And I was, you know, at the last status hearing, the government suggested, well, he could do a medical transport. He could report to a BOP facility in Southern California and be medically cared for while he goes to North Carolina. But the BOP, in its multitudinous program statements, has a prohibition against moving unstable patients, particularly with cardiomyopathy and cardiac conditions. So, in fact, there's just not enough evidence here. We don't know that he could safely get there. We do know, based on our medical evidence, that there is a significant problem with his transport and that if he goes, he could die. And courts, you know, a death sentence is not appropriate for somebody, particularly an 81-year-old guy whose first crime was at the age of 76. So I would request a remand for resentencing so the district court can adequately consider all of this. Thank you. Thank you very much. The case is taken under advisement.